NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC. a/s/o CLUB II at MATTIX FORGE, | Civil No. 09-4891 (AET) |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| CHRISTOPHER MCGILLICK; EDWARD SPANG; ANDREW ECKERT; KEVIN OTTE; and JOHN / JANE DOES 1-25, | |
| Defendants, | |
| v. | |
| JAMES P. OTTE; and THERESA OTTE, | |
| Third-Party Defendants. | |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter has come before the Court upon Defendant, Kevin Otte and Third-Party Defendants Theresa Otte and James P. Otte's Motion for Summary Judgment [docket # 48]. Plaintiff Community Association Underwriters of America, Inc. ("CAU") opposes the Motion [49]. Defendants Andrew Eckert and Edward Spang have each filed Cross-Motions for Summary Judgment and Contingent Oppositions to the Motion for Summary Judgment [50; 51]. The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, the motions are denied.

-1-

II. BACKGROUND

Plaintiff CAU is the insurer of Club II at Mattix Forge ("Club II"), a property which sustained damage due to a fire that allegedly originated at the condominium unit rented by Defendants McGillick, Eckert, Spang and Otte, and owned by Third-Party Defendants James and Theresa Otte.[1]  Having paid for damages pursuant to Club II's insurance policy, CAU became subrogated to Club II's claims asserted in this action.  CAU claims that the fire that damaged Club II's property was proximately caused by the negligence of the Defendants and/or their party guests.  (First Am. Compl. ¶¶ 14–15, 18–21) [23].[2]

After CAU filed its Amended Complaint, Defendant Edward Spang filed a Third-Party Complaint against James Otte and Theresa Otte, alleging that they negligently failed to supervise and control the actions of the tenant Defendants, to follow condominium rules and regulations, and to keep their premises in a hazard-free condition.  (Third-Party Compl. ¶ 2) [36].  Defendant Kevin Otte and the Third-Party Defendants now move for Summary Judgment on the grounds that Club II's public offering statement and condominium association bylaws both contain a waiver of subrogation of claims against unit owners.  (Br. in Supp. 3) [48].[3]  They further argue that Kevin Otte cannot be sued because the subrogation waiver precludes any action against their insurance policy, which includes Kevin Otte, and that public policy reasons favoring waiver

---

[1] The Third-Party Defendants are the parents of Defendant Kevin Otte.  The Third-Party Defendants have their own homeowners' insurance policy issued by New Jersey Manufacturers Insurance Company ("NJMI"), (Br. in Supp. 2), that also covers Defendant Otte.  Defense counsel was originally retained by NJMI to defend Kevin Otte, and now also represents Third-Party Defendants Theresa and James Otte in this dispute.  (*Id.* 3–4.)

[2] According to Plaintiff's Complaint, the Defendants threw a party at the condominium unit they were renting and, at some point after the party ended, a couch on Defendants' patio deck caught on fire due to the negligence of either the Defendants or their party guests in disposing of smoking or flammable materials.  (First Am. Compl. ¶¶ 14–15, 18–21.)  This fire then spread to 11 other units.  (*Id.* ¶ 14.)

[3] The Ottes extend this argument in their Reply Brief by asserting that even if the association bylaws and public offering statement are not waivers, both documents have the force of contract and are binding as between the association and both unit owners as well as tenants.  (Reply Br. 1–2.)

apply equally to tenants.  (*Id.* at 6–8.)  Plaintiff does not oppose Summary Judgment as to the Third-Party Defendants, but opposes Summary Judgment as to Kevin Otte because Club II's policy itself does not contain a subrogation waiver and because any alleged subrogation waiver does not apply to tenants of unit owners.  (Br. in Opp'n 9.)

Defendants Andrew Eckert and Edward Spang each seek Summary Judgment dismissing all claims against them based on the same public policy reasons cited by Defendant Otte for applying subrogation waivers to tenants.  (Cross-Mot. for Summ. J. of Andrew Eckert & Contingent Opp'n ¶ 3) [50]; (Cross-Mot. for Summ. J. of Edward Spang & Contingent Opp'n ¶ 3) [51].[4]  Eckert and Spang each argue in the alternative that, if they are denied Summary Judgment, then Summary Judgment should also be denied as to Defendant Kevin Otte.  (Eckert Cross-Mot. ¶ 8); (Spang Cross-Mot. ¶ 8).

## III. ANALYSIS

### A. Standard of Review for Summary Judgment Motions

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment should be granted, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion."  Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted).  In resolving a motion for summary judgment, the Court must determine "whether the

---

[4] Plaintiff CAU responds to Eckert and Spang's Cross-Motions with the same arguments made in its opposition to Kevin Otte's motion [52].

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). Specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49.

### B. Subrogation and Waiver

This case is before the Court on diversity jurisdiction, under 28 U.S.C. 1332(a)(1). Accordingly, while we follow federal procedural rules, we apply the substantive law of the state in which this Court sits. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The crux of the present motion is whether the Plaintiff insurance company waived subrogation, the right to step into the shoes of the insured condominium association and thereby sue either the unit owners or the tenants allegedly responsible for the damage costs paid out. Because subrogation is a common law doctrine, we apply New Jersey law. *See Continental Ins. Co. v. Boraie*, 672 A.2d 274, 278 (App. Div. 1995) (stating that "subrogation is an assignment that arises either by contract, or equitable principles"); *see, e.g., Continental Cas. Ins. Co. v. Darella Elec., Inc.*, 2010 WL 502988, at *3 (D.N.J. February 9, 2010) (applying New Jersey case law to subrogation case).

The New Jersey Supreme Court has defined subrogation as "a device of equity to compel the ultimate discharge by the one who in good conscience ought to pay it." *Standard Accident Ins. Co. v. Pellechia*, 104 A.2d 288, 292 (N.J. 1954). Under New Jersey law, "a carrier paying an insurance loss is entitled to subrogation against the tortfeasor" responsible for any damage to the insured. *Boraie*, 672 A.2d at 275 (citing *Pellechia*, 104 A.2d 288). However, "the rights of a subrogated insurer can rise no higher than the rights of its insured." *Id.* (quoting *Foster Estates, Inc. v. Wolek*, 105 N.J. Super. 339, 341 (App. Div. 1969).

**C. Application**

    **1. Summary Judgment as to Third-Party Defendants James and Theresa Otte**

Here, the Third-Party Defendants's subrogation waiver argument is not based on the insurance policy issued by Plaintiff CAU to Club II, (*see* Br. in Supp. Ex. A), which is likely because the policy does not appear to contain any waiver. Rather, they argue that Plaintiff is barred from suing them based on the waivers of subrogation found in two other documents: the Public Offering Statement ("POS") and the Bylaws of the Club II at Mattix Forge Condominium Association ("Bylaws"). (Br. in Supp. 4) [48-1]. We conclude that the POS does not hold any contractual effect, and that genuine issues of material fact remain as to the effect of the Bylaws. Accordingly, summary judgment is not appropriate with respect to the Third-Party Defendants.

    Section Y of the POS provides:

> All policies of physical damage insurance shall contain waivers of subrogation and of any reduction of pro rata liability of the insurer as a result of any insurance carried by the unit owners or of invalidity arising from any acts of the insured or any unit owners . . . .

(Br. in Supp. Ex. E, at 11) [48-6 at 16]. However, there is no indication that the POS is a contract. To the contrary, the POS states in capital letters both on its cover-page as well as in Section X immediately preceding the above section that it is for "INFORMATIONAL PURPOSES ONLY." (*Id.*) [48-6 at 1, 16]. Moreover, New Jersey case law suggests that while a POS is a required disclosure under the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 *et seq.*, it "does not represent any contractual agreement between the shareholder and the cooperative." *Sulcov v. 2100 Linwood Owners, Inc.*, 696 A.2d 31, 40 (N.J. Super. Ct. App. Div. 1997). Accordingly, we cannot conclude that this document in and of itself

constitutes a subrogation waiver, nor can we conclude that it binds the association with the force of contract.[5]

Turning to the Bylaws, Section R provides language identical to that featured in Section Y of the POS. (Br. in Supp. Ex. E, at 54) [48-7 at 29]. The two questions at stake are: (1) whether the Bylaws contractually require subrogation waiver in any insurance policy carried by the association; and, if so, (2) whether the Bylaws operate to preclude the Plaintiff insurer from bringing suit.

Regarding the first question, Defendants argue that Section Q of the Bylaws merely directs the association to purchase insurance "to the extent obtainable, in accordance with sound industry practice." (Br. in Opp. 8) [49]. However, a careful reading of the Bylaws as a whole reflects that this language applies solely to the types of insurance specified in Section Q. The provision regarding waiver of subrogation is included in a separate section (Section R), which does not contain the conditional language featured in Section Q. The import of this construction is that, while inclusion of the various types of insurance in Section Q—fire insurance, workmen's compensation, public liability insurance, etc.—is subject to conditional language, the inclusion of a subrogation waiver is an absolute requirement. (*See* Br. in Supp. Ex. E, at 54 (stating that "*All* policies of physical damage insurance *shall* contain waivers of subrogation" (emphasis added))) [48-7 at 29].

The answer to the second question—whether the requirement of waiver in the Bylaws operates to bar Plaintiff's suit—is less clear. The "Purpose" provision of the Bylaws states that the Bylaws are applicable to "the Association" and "to all members thereof." (Br. in Supp. Ex.

---

[5] The Third-Party Defendants do not argue that Club II affirmatively represented through the POS that it would obtain a subrogation waiver, and therefore we do not consider whether such a representation would estop Club II's subrogee, the Plaintiff, from arguing that the insurance policy does not in fact contain a subrogation waiver.

E, at 48) [48-7 at 23]. Plaintiff is an insurance company that was not a party to these Bylaws, but would inherit Club II's claims under the Bylaws as a subrogee. Herein lies the circularity of trying to apply the Bylaws to the insurer: only by stepping into the shoes of the insured by virtue of subrogation does the insurer become a party to Bylaws that require waiver of the very same subrogation. In our view, the only clear away around this conundrum is that, while the Third-Party Defendants may counter-claim for breach of contract, any alleged breach by Club II in failing to waive subrogation does not preclude Plaintiff's suit.

Thus, we will deny summary judgment as to the Third-Party Defendants, Theresa and James Otte.

### 2. Summary Judgment as to Defendant Kevin Otte

Having concluded that the POS and Bylaws do not operate to bar suit against the unit owners, it would seem to follow almost as a matter of course that neither document would bar suit against the Defendant Kevin Otte. However, for the sake of completeness, we address Defendant Otte's arguments in turn.

Defendant Kevin Otte signs onto the same arguments as those made by Third-Party Defendants. However, because he is a tenant and not a unit owner, Otte argues that the subrogation waiver in the POS and Bylaws precludes recovery not only against the unit owners but against the "policy of insurance issued to the unit owners," under which he too is covered. (Br. in Supp. 6.) [48-1]. He also asserts that public policy reasons for subrogation waiver apply equally to tenants, given their status as intended beneficiaries of the restrictive covenants in condominium association documents. (*Id.* 6–7.) We disagree on both counts.

First, the subrogation waiver provision in the Bylaws states, "All policies of physical damage insurance shall contain waivers of subrogation and of any reduction of pro-rata liability

-7-

of the insurer as a result of any insurance carried by Unit Owners." (Br. in Supp. Ex. E, at 54) [48-7 at 29]. Even assuming this Bylaw provision is given contractual effect, nothing on its face suggests that it applies as against all individuals included on a unit owner's insurance policy. To the contrary, the following provision, entitled "Unit Owner's Insurance," states that "Unit Owners *may* obtain insurance on their own account and for their *own* benefit." (*Id.* (emphasis added).) We are not inclined to construe the subrogation waiver as applying to all parties insured under a unit owner's policy where the Bylaws themselves consider such a policy to be both optional and confined to the unit owner's benefit.

Second, we find Defendant Otte's resort to public policy similarly unpersuasive. Defendant relies upon *Skulkie v. Ceponis*, a case in which the New Jersey Appellate Division concluded that a subrogation waiver barred a unit owner's insurer from suing either the condominium association or the uninsured unit owner allegedly responsible for the water damage. 962 A.2d 589, 591 (N.J. Super. Ct. App. Div. 2009). The *Skulkie* court reasoned that "[t]he scheme created by this residential condominium community contemplated no litigation between unit owners or between unit owners and the Association." *Id.* However, *Skulkie* fails to support Defendant's position for two reasons. First, whereas in *Skulkie* the insurance policy contained a subrogation waiver provision, the CAU policy issued to Club II does not appear to contain any waiver. (*See* Br. in Supp. Ex A.) Second, *Skulkie* solely describes the relationship of unit owners and the condominium association; it says nothing about other parties such as tenants. For that matter, the *Skulkie* court's reliance on *Schiller v. Community Technology, Inc.*, 78 A.D.2d 762 (N.Y. App. Div. 1980) (holding that a waiver scheme was not frustrated by suits against negligent third parties), suggests that, if anything, *Skulkie* would not bar suits by insurers

against tenants.  We also note that, in this case, the terms of the Bylaws provide no indication that tenants hold the same rights as unit owners:

> [M]embership in the Association shall be limited to the Owners or Co-owners of Units. . . .
>
> In the event that a Member shall lease or permit another to occupy his Unit, the tenant or occupant shall be permitted to enjoy the recreational and community facilities of the Association, but shall not vote in the affairs of the Association unless the Member shall permit the tenant or occupant to exercise the proxy vote of the Member.

(Ex. E, at 48) [48-7 at 23].  This provision suggests that, to the extent that subrogation waiver is required by the Bylaws, such a requirement does not accrue to the benefit of tenants.  Thus, because Defendant Kevin Otte can avail himself of neither the Third-Party Defendants' insurance policy, nor the policy reasons supporting waiver with respect to unit owners, his Motion for Summary Judgment must be denied.

### 3. Summary Judgment as to Defendants Andrew Eckert and Edward Spang

Defendants Eckert and Spang argue that they should be dismissed from this suit for the same public policy reasons argued by Defendant Kevin Otte.  This argument fails for the same reasons stated with respect to Defendant Kevin Otte.  Thus, we will deny summary judgment as to Defendants Eckert and Spang.

### IV.   CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS on this 13th day of December, 2010

ORDERED that Defendant Kevin Otte and Third-Party Defendants James and Theresa Otte's Motion for Summary Judgment [48] is DENIED; and it is further

ORDERED that Defendant Andrew Eckert's Motion for Summary Judgment [50] is DENIED; and it is further

ORDERED that Defendant Edward Spang's Motion for Summary Judgment [51] is DENIED.

                                                 */s/ Anne E. Thompson*
                                                 ANNE E. THOMPSON, U.S.D.J.