NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC. a/s/o CLUB II at MATTIX FORGE,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER MCGILLICK; EDWARD SPANG; ANDREW ECKERT; KEVIN OTTE; and JOHN / JANE DOES 1-25,<br><br>    Defendants,<br><br>    v.<br><br>JAMES P. OTTE; and THERESA OTTE,<br><br>    Third-Party Defendants. | Civil No. 09-4891 (AET)<br><br>**OPINION** |

THOMPSON, U.S.D.J.

### I. INTRODUCTION

This matter has come before the Court upon the Motions for Summary Judgment filed by Defendant Kevin Otte and Third-Party Defendants Theresa Otte and James P. Otte (collectively, "Ottes") [docket # 71], Edward Spang [73], Chris McGillick [76], and Andrew Eckert [77]. Plaintiff Community Association Underwriters of America, Inc. ("CAU") opposes the motions filed by Defendants Kevin Otte, Spang, and Eckert [80, 82, 83]. The Ottes oppose McGillick's motion [81]. The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, we will grant the motions filed by the Ottes, and Defendants McGillick, Spang, and Eckert.

-1-

## II. BACKGROUND

This case involves a fire that originated at the condominium unit at Club II at Mattix Forge ("Club II") rented by Defendants McGillick, Eckert, Spang and Kevin Otte, and owned by Third-Party Defendants James and Theresa Otte.[1] (*See* Plaintiff's Cross Statement of Facts ("CSF") ¶¶ 1, 4–5) [80]. Plaintiff CAU is the insurer and subrogee[2] of the Club II Condominium Association, having paid claims under Club II's insurance policy with respect to the fire damage to the condominium property. (*See id.* ¶ 3.) CAU asserts that the fire that damaged Club II's property was proximately caused by the negligence of the Defendants or their guests. (*See* First Am. Compl. ¶¶ 14–15, 18–21) [23].

On January 31, 2009, Defendants Eckert, Spang, and Kevin Otte hosted a party of roughly forty guests at their condominium unit to celebrate a friend's 23rd birthday; Defendant McGillick was not at the unit for most of that day and did not attend the party. (CSF ¶¶ 8, 10, 11.) In preparation for the party, Eckert, Spang, and Otte moved furniture from the living room to the balcony, (*see id.* ¶ 27)—including two chairs, a table, a battery-operated Hummer-style Power Wheels™ toy car, and an extra keg of beer, (Pl.'s Opp'n to Mot. for Summ. J. Ex. E, Andrew Eckert Dep. 52:20–53:5, 58:7–10, 59:8–11) [80-10]—in order to create more space inside the unit and block the balcony so that guests could not smoke on it or urinate off of it, (*id.* 58:1–10); (Pl.'s Opp'n Ex. F, Edward Spang Dep. 27:23–28:12). Although the Defendants had allowed their guests to smoke on the balcony during the twenty-five to thirty other parties they had previously held, they did not allow their guests to do so on the night in question. (Eckert

---

[1] The Third-Party Defendants are the parents of Defendant Kevin Otte.
[2] Subrogation is an insurer's right to step into the shoes of the insured and sue on the insured's behalf. *Cont'l Cas. Ins. Co. v. Darella Elec., Inc.*, No. 08-0683, 2010 WL 502988, at *3 (discussing New Jersey subrogation doctrine). A fuller discussion of subrogation as applied to this case may be found in this Court's Opinion & Order dated December 13, 2010 [65].

Dep. 46:8–48:5.)  Instead, according to the deposition testimony of Eckert, Spang, and Otte, they posted a sign on the front door stating, "Please Smoke Outside on the Stairwell or on the Landing," and another sign on the sliding-glass balcony door stating, "No Smoking Out on the Balcony."  (*Id.* ¶ 25.)  The Defendants did not provide any receptacle for disposing cigarette butts or other smoking materials.[3]  (Eckert Dep. 104:21–105:16); (Spang Dep. 35:18–36:7).  Instead, they expected guests to discard their cigarette butts over the railing onto the concrete on the ground level.  (*See* Eckert Dep. 41:10 – 44:12); (Spang Dep. 34:23–35:17).  Although Club II's property manager, Marjorie Mastro, testified that Club II prohibits smoking in the hallways and stairwells, (*see* Pl.'s Opp'n Ex. I, Marjorie Mastro Dep. 56:18–21), the Club II at Mattix Forge Resident Handbook does not include a smoking policy and there are no signs advising residents of the association's smoking policy, (*id.* at 33:5–8; 35:6–9), nor does the association provide ashtrays or other receptacles, (*id.* at 35:10–16).

During the party, the Defendants and their guests consumed alcoholic beverages, including one and a half kegs of beer as well as some vodka.[4]  (CSF ¶¶ 12–14.)  None of the Defendants who were present at the party smoke cigarettes.[5]  (Eckert Dep. 45:18–22.)  Defendants orally instructed their guests to smoke outside the unit in the third-floor hallway or stairwell.  (CSF ¶ 26.)  Eckert stated in his deposition that he observed between ten and fifteen people smoking outside, (Eckert Dep. 49:24–50:2), whereas Spang stated that he observed no more than five guests smoking outside the front doorway or on the landing between staircases,

---

[3] Although Kevin Otte testified that Eckert told him there was an ashtray outside, Otte never went outside during the party, (Pl.'s Opp'n Ex. G, Otte Dep. 47:15–49:18), and this testimony is contradicted McGillick's statement during his deposition that Defendants did not own an ashtray, (*id.* Ex. H, McGillick Dep. 34:7–21).

[4] Defendants Otte and Spang stated during their deposition testimony that they consumed alcohol at the party.  (*Id.* ¶ 17.)  Defendant Eckert testified that he did not consume any alcoholic beverages, although Otte stated at his deposition that he observed Eckert playing "drinking games" and party-guest Brandon Smith similarly testified that he observed Eckert drinking beer.  (*Id.* ¶¶ 15–16.)

[5] Although Defendant McGillick testified that he smokes cigarettes, (Pl.'s Opp'n Ex. I, McGillick Dep. 15:18–20), he was not at the apartment on the night of the party.

(Spang Dep. 54:14–55:12).  According to Defendants Eckert, Spang, and Otte, the balcony door was locked throughout the party and no one went out onto the balcony during the party.  (CSF ¶ 28.)  Defendant Otte stated that it would not have been a good night to go out onto the balcony anyway, given that the weather conditions were cold and windy.  (Otte Dep. 89:5–16.)  However, party-guest Ashley Lauterbach stated in her deposition that she observed some of the other guests standing out on the balcony "for a breather" but not smoking, and that the balcony door was cracked open during the party because it was warm inside the unit.  (CSF ¶ 29); (Lauterbach Dep. 19:4–10, 21:10–17.)

The last of the guests left at approximately 2:00am, and Defendants Eckert, Spang, and Otte each went to bed between 2:30am and 3:30am.  (CSF ¶ 34–36.)  They were subsequently awoken by their smoke alarm and noticed a fire along the wall adjacent to the balcony, so they exited the unit.  (CSF ¶ 37.)  Galloway Township Fire Marshal Ronald Garbutt, Jr., who visited the unit the same night to investigate the incident, determined that the fire had originated on the right rear corner of the balcony and that it was probably caused accidentally by a "carelessly discarded cigarette."  (Pl.'s Br. in Opp'n Ex. B, Galloway Township Fire Department Fire Investigation Unit Fire Investigation Report.)  Garbutt's report states that an "outlet and light fixture was [sic] also located on the right side of the deck and it was determined that they were not the cause of the fire."  (*Id.*)

Plaintiff's expert—certified fire investigator Louis H. Gahagan—inspected the scene on February 3, 2009, and subsequently prepared two reports.  (CSF ¶ 39.)  In his October 2009 report, Gahagan details his inspection of the unit and concludes "to a reasonable degree of fire investigative certainty" that a "cigarette or other type of smoking material was discarded into the sofa[,] which smoldered for an extended period then broke into an open flame."  (*id.* Ex. C,

October 13, 2009 Report, at 3.)  In his September 2010 report, Gahagan describes his additional inspection of the building's stairwell design and concludes:

> Given the design of the stairwell and associated landings, anyone smoking on either the common hallway for the upper level or at the landing for the mid level could have easily ignited this fire.  A carelessly discarded cigarette flicked to the exterior would have had to travel less than one foot (1') across the rear of the building from either of these areas to land at the area of origin.

(Pl.'s Br. in Opp'n Ex. D, September 16, 2010 Report, at 2.)  This report reiterates Gahagan's previous conclusion that, to a reasonable degree of certainty, the fire was accidentally caused by a cigarette igniting a sofa on the balcony.  (*Id.*)

Photographs of the building reflect that the landing platform is located in between the second and third floors.  (*See, e.g.*, Ottes' Br. in Supp. Ex. E.)  Specifically, the platform for the stairwell landing area appears to be roughly five feet lower than the balcony of Defendants' third-floor unit.  (*Id.*)  Moreover, there is a one-foot-thick wall separating the stairwell area from Defendants' balcony.  (*Id.*)  According to Eckert, the upholstered chairs on the balcony were located toward the right rear corner away from the sliding-door and set back a couple feet from the edge of the balcony.  (Eckert Dep. 59:17–19; 61:4–6.)

On September 24, 2009, Plaintiff CAU filed a Complaint alleging negligence on the part of Defendants Eckert, McGillick, Spang, and Kevin Otte.  (*See* Compl.) [1].  Plaintiff subsequently amended the complaint on December 22, 2009.  (*See* Am. Compl.) [23].  On May 13, 2010, Defendant Spang filed a Third-Party Complaint against James Otte and Theresa Otte claiming that they negligently failed to supervise and control the actions of the tenant Defendants, follow condominium rules and regulations, and keep their premises in a hazard-free condition.  (Third-Party Compl. ¶ 2) [36].

Defendant Kevin Otte and Third-Party Defendants James and Theresa Otte now move for Summary Judgment as to the claims against them. [71]. Defendants Spang, McGillick, and Eckert have each separately moved for summary judgment as to all claims against them. [73, 76, 77]. Plaintiff has not opposed summary judgment as to the Third-Party Defendants or Defendant McGillick; Plaintiff does, however, oppose summary judgment as to Defendants Kevin Otte, Spang, and Eckert. [80, 82, 83].

### III. ANALYSIS

**A. Legal Standard for Summary Judgment Motions**

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). Specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49.

**B. New Jersey Tort Law**

This case is before the Court on diversity jurisdiction, under 28 U.S.C. 1332(a)(1).

Accordingly, while we follow federal procedural rules, we apply the substantive law of the state in which this Court sits. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The crux of the present dispute is whether the Defendants' negligence proximately caused the fire that originated on the balcony of Club II's Unit # 60. Because negligence sounds in common law tort doctrine, we apply New Jersey substantive law.

To prove negligence under New Jersey common law, a plaintiff must establish: "(1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages." *Meier v. D'Ambose*, 17 A.3d 271, 274 (N.J. Super. Ct. App. Div. 2011 (citing *Brunson v. Affinity Fed. Cred. Union*, 972 A.2d 1112, 1123 (N.J. 2009)).

Whether a duty of care exists is a question of law for the court to analyze in light of the foreseeability of harm to a potential plaintiff and considerations of fairness and public policy. *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007). "Foreseeability" in the duty context refers to the risk of harm that is "'reasonably within the range of apprehension.'" *Id.* (quoting *Clohesy v. Food Circus Supermarkets, Inc.*, 694 A.2d 1017, 1021 (N.J. 1997)). The fairness inquiry looks at four factors: "'the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" *Id.* (quoting *Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996)).

### C. Application

#### 1. Summary Judgment as to Defendants Kevin Otte, Andrew Eckert & Edward Spang

Because Defendants Kevin Otte, Eckert, and Spang (collectively, "tenant Defendants") are in largely the same position with respect to the party they hosted on the night of the fire, the Court addresses their arguments together.

As an initial matter, we note that none of the tenant Defendants themselves smoke cigarettes and there is no evidence that anyone else smoked on the balcony[6] during the party they hosted. Therefore, Plaintiff cannot rely upon a *res ipsa loquitur* theory because there is no evidence that the cigarette that started the fire was within the Defendants' exclusive control. *Khan v. Singh*, 975 A.2d 389, 394 (N.J. 2009) (stating that predicates of *res ipsa loquitur* are "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect"); *see also Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 160 (N.D. 1985) (stating that *res ipsa loquitur* charge was erroneous where it was uncertain which of three different smokers had exclusive control over cigarette that started apartment fire); *Oliver v. Hutson*, 596 S.W.2d 628, 631 (Tex. Civ. App. 1980) (same). Additionally, although the New Jersey Supreme Court has recognized a duty on the part of a host serving liquor where it is foreseeable that an intoxicated social guest will be operating a motor vehicle, *see Kelly v. Gwinnell*, 476 A.2d 1219, 1224 (N.J. 1984), lower courts have not extended a host's duty to encompass a guest's harmful acts that are not related to the

---

[6] Plaintiff asserts that the contradictory testimony as to whether any of the guests were outside on the balcony calls into question the credibility of the Defendants' testimony that no one smoked on the balcony. (Pl.'s Resp. 20) [80]. However, the problem with this argument is that Ashley Lauterbach—the only person who testified that guests were on the balcony—stated that guests went out on the balcony "for a breather" and not to smoke. (*See* Lauterbach Dep. 19:4–10, 21:10–17.)

operation of a vehicle or that are otherwise unforeseeable.  *See, e.g.*, *Griesenbeck by Kuttner v. Walker*, 488 A.2d 1038, 1042 (N.J. Super. Ct. App. Div. 1985).  Accordingly, we analyze this case based on traditional negligence principles.

Under New Jersey law, "[t]he mere fact that the fire originated on the premises in possession of [a] defendant does not of itself constitute evidence of his negligence."  *Lefeber v. Goldin*, 86 A.2d 287, 288 (N.J. Super. Ct. App. Div. 1952).  Rather, a property owner is not liable for the spread of a fire accidentally started by a third-party "unless he is guilty of negligence in respect to the condition of his premises . . . ."  *Menth v. Breeze Corp.*, 73 A.2d 183, 188 (N.J. 1950).  For example, an owner may be held liable where he "has kept his premises in an unsafe and dangerous condition, as by the accumulation of inflammable material thereon so as to create a fire hazard . . . ."  *Id.*  If so, liability will attach even though the fire "may have been started by the act of a third person or independent agency or any unauthorized act, if such act was reasonably foreseeable as the natural and probable consequence of the negligent manner in which the premises were kept."  *Id.*

Because there is no evidence that anyone smoked on the tenant Defendants' balcony, the key question is whether the tenant Defendants' placement of furniture on the balcony created a condition so unsafe or dangerous as to create a reasonably foreseeable risk that a third-party's off-premises actions would start a fire.  We answer this question in the negative.  This conclusion is best illuminated by distinguishing the facts here from those involved in the two cases upon which Plaintiff principally relies—*Menth v. Breeze Corp.*, 73 A.2d at 183, and *Scully v. Fitzgerald,* 843 A.2d 1110 (N.J. 2004).  In *Menth*, the defendant manufacturing company had rented an unimproved lot on which it had stored in a shed several oil-soaked burlap bags; a fire started in the shed and subsequently spread to the plaintiffs' apartment house and destroyed the

-9-

plaintiffs' personal property. 73 A.2d at 185. The New Jersey Supreme Court held that *res ipsa loquitur* did not apply, but went on to hold that the plaintiffs had presented a prima facie case of negligence, given the foreseeability that flammable materials would cause the damage that resulted. *Id.* at 190. Here, unlike *Menth*, the upholstered chairs Defendants placed on the balcony were not foreseeably flammable in the same way that oil-soaked bags would be.[7]

In *Scully*, the plaintiff's commercial leasehold was damaged by a fire that started in an open storage area that was maintained by the defendant landlord and contained construction debris and garbage and into which second-floor tenants of the apartment building regularly discarded cigarettes. 843 A.2d at 119–20. The New Jersey Supreme Court held that a jury could conclude that defendant maintained the storage area in a dangerous condition and that it was foreseeable that a tenant's carelessly discarded cigarette would start a fire. *Id.* at 130. Here, by contrast, party-guests discarded cigarettes over the stairwell landing-area railing onto the ground-floor concrete area. It is not reasonably foreseeable that such conduct would start a fire, nor is it foreseeable that a cigarette would fly upward and to the right of the stairwell area and land on the chairs upon which the fire apparently started.

We also note our disagreement with Plaintiff's argument that the tenant Defendants had a duty either to prevent cigarettes from being discarded from the common areas or to provide a receptacle into which to discard cigarettes. (*See, e.g.*, Pl.'s Opp'n to Eckert's Mot. for Summ. J. 25) [83]. As noted above, New Jersey courts have not extended social host liability beyond harms foreseeably caused by a guest's intoxication. And Plaintiff has not identified any New

---

[7] Plaintiff argues that *Menth* focused more on the defendants' failure to take proper precautions than on the flammability of the materials. However, a careful reading of *Menth* illustrates that the Court's reasoning focused almost entirely on the foreseeability of a fire given the highly inflammable character of the oil-soaked bags. *See, e.g.*, *id.* ("Furthermore the storage of these bags away from defendant's plant, in a shed on an unimproved lot across the street, is strongly indicative that the defendant knew of their inflammability, and foresaw the danger inherent in their storage.").

Jersey case law supporting a duty on the part of tenants with respect to property they are not leasing. Creating such a duty would be particularly inappropriate in a case such as this, where there is no direct evidence that the cigarette that purportedly caused the fire was discarded by one of the tenant Defendants' guests.

### 2. Summary Judgment as to Defendant McGillick

Defendant McGillick testified at his deposition that he was not present at the party, did not participate in the planning of the party, and was not at the unit beyond the afternoon on January 31, 2009. (McGillick Br. in Supp. Ex. B, McGillick Dep. 49:23–51:3.) Plaintiff has not disputed this testimony or even filed an opposition to McGillick's motion. Because McGillick was not at the condominium unit on the night in question, fairness and public policy considerations weigh against holding him liable for the conditions of the premises. *See Anderson*, 922 A.2d at 1284. Accordingly, we will grant summary judgment as to Defendant McGillick.

### 3. Summary Judgment as to Third-Party Defendants James and Theresa Otte

Third-Party Defendants James and Theresa Otte have moved for summary judgment on the grounds that, absent evidence that anyone was smoking on the balcony, Plaintiff cannot establish that the Ottes owe any duty with respect to the conduct of the tenant Defendants' guests that occurred off the property. (Otte Defs.' Br. in Supp. 11.) Instead, they argue, the Plaintiff's subrogor—Club II—is more appropriately considered the landlord or owner of the common areas from which an errant cigarette might have been discarded. (*Id.*) Plaintiff has stated that it does not oppose the motion for summary judgment as to the Third-Party Defendants. (Pl.'s Resp. in Opp'n to Mot. for Summ. J. of Def. Kevin Otte & Third-Party Defs. Theresa & James P.

Otte 1–2.)  Accordingly, we will grant summary judgment as to Third-Party Defendants James and Theresa Otte.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, the Defendants' and Third-Party Defendants' motions for summary judgment are granted.  An appropriate order will follow.

                                                 ***/s/ Anne E. Thompson***
                                                ANNE E. THOMPSON, U.S.D.J.

Dated 9/29/11